Oscar JONES, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Individually and in her capacity as Secretary of Health and Human Services, Defendant-Appellee.

No. 81–7753.

United States Court of Appeals, Eleventh Circuit.

April 14, 1983.

Lisa J. Krisher, Augusta, Ga., for plaintiff-appellant.

Bernard E. Namie, Asst. U.S. Atty., Macon, Ga., for defendant-appellee.

---

**3.** Policy Statement 5882.1, October 4, 1977.

Before RONEY and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

Oscar Jones brought this action to obtain judicial review of the termination of his social security disability insurance benefits and supplemental security income. The United States District Court for the Middle District of Georgia upheld the decision of the Secretary of Health and Human Services, finding appellant not to be disabled within the meaning of the Social Security Act, 42 U.S.C. sec. 301, *et seq.* Specifically, the district court found that appellant's refusal to submit to a myelogram and/or disc surgery constituted willful failure to follow prescribed treatment without which the Secretary was unable to determine if appellant was under a disability. Because we find that there was inadequate evidence to support the district court's ruling that appellant willfully failed to follow prescribed treatment, we reverse the decision of the district court and remand this case for consideration of whether appellant is otherwise entitled to receive disability benefits.

Oscar Jones was born on May 18, 1927 and completed the third grade in school, before beginning work as a sharecropper on a farm. At the age of 14, Jones was employed in the pulpwood industry. Jones worked as a woodcutter, truck loader and unloader, and in various other positions in the pulpwood industry until he was injured on the job in February of 1974. At that time, Jones fell off a truck on which he was loading wood and injured his back and right hip.

Jones' initial treating physician noted that Jones reported intense pain and, in addition to other symptoms, was unable to perform straight leg raising above 20 degrees. After treating Jones for several weeks for pain, his physician referred Jones to a surgeon, Dr. Perry Cohn. Dr. Cohn recommended a spinal fusion, but Jones elected to follow more conservative treat-

ment. Dr. Cohn saw Jones again in March of 1975 and noted that Jones was still having severe pain in his back and down into his leg. Dr. Cohn continued to diagnose the problem as an acute herniated disc and noted:

> I plan to admit him to the hospital where he will undergo a myelogram and if indicated a consideration for surgery. A laminectomy and fusion will probably come to pass.

(Record, Vol. 2 at 129). In notes dated April 4, 1974, Dr. Cohn recorded that Jones was offered a myelogram, but refused to have the myelogram, feeling that he was much better since the initial attack. Dr. Cohn noted that Jones had obtained some relief of pain through heat, exercise, and massage. Dr. Cohn continued to believe, however, that a myelogram should have been done in spite of the risk involved. (Record, Vol. 2 at 131).

Jones filed applications for social security and disability benefits on April 4, 1975 and April 5, 1976. Jones' applications were denied initially. Jones was subsequently examined by Dr. Howard B. Krone in May of 1976. Dr. Krone concluded that Mr. Jones had a herniated nucleus pulpasus, untreated. On the standard Social Security form for evaluation of functional capacity, Dr. Krone indicated that Jones could lift twenty pounds occasionally to ten pounds frequently, could stand and walk two out of eight hours, could not sit and work as much as six out of eight hours, and was restricted from bending and stooping. Jones' applications were reconsidered, with Dr. Krone's evaluation, and in November of 1976 Jones was awarded social security benefits for a disability period beginning February 24, 1974.

On December 29, 1978, the Social Security Office referred Jones to Dr. Joe Christian. Dr. Christian reported that his examination was negative for any objective findings, although Jones complained bitterly of tenderness in the lower back and pain on motion of the lower back. Dr. Christian commented that it was peculiar that Jones complained so bitterly of pain yet refused

treatment that might help him. Dr. Christian concluded by diagnosing Jones' problem as mild degenerative arthritis. Using the standard Social Security form for evaluation of functional capacity, Dr. Christian indicated that Jones was capable of lifting 20 pounds occasionally and 10 pounds frequently, and standing and walking 6 or more hours in a normal workday. Thus, Jones was qualified as able to do light work. In January of 1979, the Social Security Office, apparently relying on Dr. Christian's report, concluded that Jones did not have a significant impairment at that time. Finding Jones capable of doing his former work as a laborer in the pulpwood industry, Jones, at age 51, was deemed not entitled to disability benefits as of December of 1978.

On August 6, 1979, a hearing was held before an administrative law judge to evaluate the termination of Jones' supplemental social security income and disability insurance benefits. The sole witness at the hearing was Jones. The administrative law judge first questioned Jones about his background and education. Jones testified that he had attended school through the third grade and that he was able to read his name and a few different things. He testified further, however, that he was unable to read a newspaper and that in reading a letter he had to skip over certain words. Jones' legal representative then questioned him about his prior work and his injury. Jones testified that he had intense pain from his lower back down the right side of his leg. He further stated that he took pain medication but that the medication failed to relieve the pain. Jones also said that he suffered from high blood pressure for which he was also taking medication. Jones testified that he was informed about the possibility of surgery but that he was told that the surgery could result in paralysis or death. (Record, Vol. 2 at 51). He testified that several doctors had mentioned the possibility of surgery, but none had reassured him. Jones specifically stated that one doctor said, "I ain't going to tell you to take it, and I ain't going to tell you not to take it," with regard to the surgery. Jones asserted he could not stand for long periods of time and that he could only walk short distances. In response to additional questions from the administrative law judge, Jones replied that he was unable to even lift his four-month-old grandchild.

In August of 1979, Jones was seen by Dr. W.S. Helton. He recorded that Jones had pain in his back in the straight leg raising test. Dr. Helton recommended that Jones have a complete neurological or orthopedic evaluation. In the final medical report in the record dated August 21, 1979, Dr. Gilmore, Jones' personal physician who had treated him over the years, stated that based on his neurological examination of Jones, he found the symptoms to be essentially unchanged from April of 1974. Dr. Gilmore concluded, "It is my considered opinion that this man is totally disabled and also surgical intervention would be of no benefit to him." (Record, Vol. 2 at 147).

In an opinion dated October 9, 1979, the administrative law judge summarized Jones' background as follows:

Claimant was found disabled in February 1974 due to a herniated disc L4–L5, L5–S1. Evidence also shows that claimant at that time refused to undergo a myclogram and possible surgery, and elected to conservative treatment which did not help claimant. Current medical evidence of record indicates that claimant suffers from mild degenerative arthritis of the lumbar spine but there is good preservation of the disc space. The claimant is closely approaching advanced age and has a marginal education at best. He can and does speak and understand the English language and can do simple transactions. His experience is at an unskilled level involving labor in the pulpwood industry. However, the medical evidence of record indicates that claimant, at least since December 1978, has been capable of performing work-related functions at a light exertional level. . . .

(Record, Vol. 2 at 14). Considering the claimant's age, education, work experience, and maximum sustained capacity, the administrative law judge concluded that under the Social Security Regulations Jones

was not disabled within the meaning of the Social Security Act. 20 C.F.R. sec. 404.1513 and sec. 416.913 (1979). The decision of the administrative law judge was affirmed by the Appeals Council of the Social Security Administration on January 21, 1980. Jones then sought judicial review in the United States District Court for the Middle District of Georgia.

Although the administrative law judge's decision was not based on whether Jones' refusal to submit to a myelogram and/or disc surgery constituted a willful failure to follow prescribed treatment, the district court determined that the case turned on that question. The district court concluded that Jones willfully refused to follow prescribed treatment without which the Secretary was unable to determine if Jones was under a disability as defined by the Act and that, consequently, the decision of the Secretary should be affirmed. The district court did not address the question of whether there was substantial evidence to support a finding that Jones was not disabled, absent a conclusion that he had willfully refused prescribed treatment.

The affirmance of the district court was based on the Social Security Regulation which provides:

> An individual with a disabling impairment which is amenable to treatment to restore his ability to work shall be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months. However, an individual who willfully fails to follow such prescribed treatment cannot by virtue of such failure be found to be under a disability. Willful failure does not exist if there is justifiable cause for failure to follow such treatment.

20 C.F.R. sec. 404.1518 (1980). The language of the regulations sets forth four requirements before a claimant's disability benefits can be terminated for the willful failure to follow prescribed treatment: (1) the impairment must have been amenable to treatment to restore the claimant's ability to work, (2) the treatment must have been prescribed, (3) the treatment must have been refused, and (4) the refusal must have been willful with no justifiable excuse. *Schena v. Secretary of Health and Human Services,* 635 F.2d 15 (1st Cir.1980), citing *Smith v. Weinberger,* 394 F.Supp. 1002, 1008 (D.Md.1975). Each of these four criteria must be supported by substantial evidence in order to provide a basis for termination. Such substantial evidence cannot be found in the record of this case.

First, there is no evidence in the record which indicates that the recommended myelogram and/or disc surgery would restore Jones' ability to work. The only evidence in the record on this point is a notation from June of 1975 by Dr. Perry Cohn in which Dr. Cohn states that he is not certain whether Jones would be completely rehabilitated by the surgery or whether his pain would be relieved such that he would enjoy his retirement more. Dr. Cohn stated, "Whether or not he would be employed if he had the operation is some concern to myself if he has been off work for one year." (Record, Vol. 2 at 128). No other evidence was introduced indicating that any physician believed, or had informed Jones, that this surgery would rehabilitate him to the extent that he would be able to work.

Nor does the record substantiate the contention that the treatment of the myelogram and/or disc surgery was prescribed for Jones. Dr. Cohn's notes of April 12, 1974 state that Jones was "offered a myelogram." When Jones informed Dr. Cohn that he would prefer to not have the myelogram, Dr. Cohn recommended an alternative of more conservative treatment involving heat, exercise, and massage. In March of 1975, Dr. Cohn's notes reflect that he planned to admit Jones to the hospital for a myelogram and possible surgery, but there is no record of Jones' response to this suggestion. In August of 1979, Dr. Helton recorded in his notes that he recommended Jones have a complete neurological or orthopedic evaluation and possibly surgery. Dr. Helton recorded in his notes, however,

that "if surgery is indicated some one could explain to him the benefits of surgery and of course any risk and let the patient make up his mind what he would like to do about it." (Record, Vol. 2 at 142). Finally, Dr. Thomas W. Gilmore, Jr., Jones' attending physician submitted a statement dated August of 1979 which concluded, "It is my considered opinion that this man is totally disabled and also surgical intervention would be of no benefit to him." (Record, Vol. 2 at 147). These documents in the record belie the district court's conclusion that a myelogram and disc surgery were prescribed for Jones. The regulations specifically state that the treatment must be prescribed. Recommendations, suggestions, and abstract opinions are not enough. *Cassiday v. Schweiker,* 663 F.2d 745 (7th Cir. 1981). Thus, while Jones' own testimony does indicate that he declined to have the myelogram and/or disc surgery, the record does not substantiate the district court's conclusion that the myelogram and/or disc surgery were prescribed.

The district court concluded that Jones' refusal to have the myelogram and/or disc surgery was a willful, unjustified refusal because:

> While a myelogram is painful it is not a high risk procedure. . . . The absence of objective medical analysis dispels any subjective fears of death or more debilitating injury; it therefore reduces his reasons for failure to follow prescribed treatment to mere speculation, which under the Act must be considered as willful.

(Record, Vol. 1 at 54). At his initial hearing, Jones stated reasons for his refusal to have the myelogram and/or disc surgery. He cited his fear that the operation would not be successful, that he could possibly be paralyzed, or that he could even die from the surgery. These fears are mentioned in the reports of the various doctors. Jones did not refuse to follow the alternative treatment which was prescribed to him, such as exercise, massage, and therapy. We also note that although the district court based its decision on Jones' refusal to submit to a myelogram and/or disc surgery, the court's statements that Jones' refusal must be considered willful are based on reasons pertaining only to the myelogram.

The district court opinion also briefly suggests that without the myelogram the Secretary was unable to determine if Jones was under a disability as defined by the Act. This is a separate question from whether benefits should be discontinued for willful failure to follow prescribed treatment. In initial assessments of disability, some courts have suggested that a myelogram would be proof of a ruptured disc, *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir.1974), or that a myelogram was necessary for an adequate diagnosis of a disability, *Chunco v. Weinberger,* 405 F.Supp. 1159 (S.D.W.Va.1975). There is no evidence in this record, however, that any physician deemed a myelogram necessary in order to determine whether Jones had a herniated disc or other back ailment. The myelogram was recommended in conjunction with possible surgery and Jones declined both, based on the fears mentioned above.

We need not here decide whether Jones would have been justified in refusing a myelogram, if needed for diagnosis, or surgery, if prescribed for recovery. Without placing our imprimatur on them, we do note that other courts have dealt specifically with spinal surgery and that there were, in those cases, valid reasons for declining such surgery. In *Cassiday v. Schweiker,* 663 F.2d 745, 750 (7th Cir.1981), the court noted that Mrs. Cassiday's personal physician, who had treated her for a number of years, had recommended that she not have the surgery which other doctors had suggested. The court concluded that Mrs. Cassiday was entitled to put her trust in a doctor whose recommendation was strong and whose knowledge of her condition was based on a long-standing doctor-patient relationship. Dr. Gilmore's statement in the present case indicates that he suggested surgery would be inappropriate for Jones. As in Mrs. Cassiday's case, the doctor recommending against surgery was the one who knew the patient over the longest period of time. In *Schena v. Secretary of Health and Human Services,* 635 F.2d 15, 19 (1st Cir.1980), the

court found Schena's refusal to undergo back surgery reasonable because he was particularly upset by the thought of it, was not reassured by any physician of the likelihood of success of the surgery, and followed alternative treatment such as extensive physical therapy and the wearing of a back brace. In *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978), the court concluded that it was not unreasonable for the patient to decline to undergo surgical spinal fusion because the patient's own doctor testified that such refusal was not unreasonable.

We must conclude that the district court's finding that Jones should be denied disability benefits because of his willful refusal to submit to prescribed treatment is not supported by the record in this case. We therefore REVERSE the decision of the district court and REMAND this case for a review of the additional grounds on which the Secretary based his decision to terminate Jones' benefits.