**Basil BARRETT, Plaintiff,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH, EDUCATION AND WELFARE OF the UNITED STATES, Defendant.**

**No. 79 Civ. 612 (ADS).**

United States District Court, S.D. New York.

Feb. 28, 1984.

nity by enacting § 1983.

Binder & Binder, Hauppauge, N.Y., for plaintiff.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for defendant; Nancy E. Friedman, Asst. U.S. Atty. New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

This is an action brought under Section 205(g) of the Social Security Act (Act), as amended 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services (Secretary) which found that plaintiff's disability had ceased as of September 1977. The parties have crossmoved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Plaintiff, now fifty-three years old, completed the first year of high school and worked in construction as a roofer and waterproofer for twenty-five years, from 1949 until 1974. His career in construction ended on November 21, 1974, when he suffered a back injury after falling down a flight of stairs while at work. Medical reports from physicians who treated or examined plaintiff during the period immediately following his fall indicated that plaintiff suffered from a combination of back impairments, including acute lumbosacral sprain, coccyygitis, scoliosis of the lumbosacral region, chronic sciatica, osteoarthritis, and probable herniated disc.

Plaintiff filed an application for disability benefits on July 9, 1975. The application was denied initially, but granted upon reconsideration. Plaintiff continued to receive disability benefits until the Social Security Administration determined, after a routine review, that plaintiff, who was then forty-seven years old, was capable of performing substantial gainful work as of September 1977, and notified him that he was not entitled to receive benefits after November 1977. At plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Harap on August 1, 1978, who made a *de novo* determination that plaintiff's disability had ceased as of September 1977. Plaintiff testified to pain in his lower back and numbness in his left leg with a resulting inability to tolerate prolonged sitting, standing, walking and lifting. Dr. Seslowe, plaintiff's treating physician at the time, found in his report dated October 22, 1975, that plaintiff suffered from chronic lumbosacral strain, and chronic sciatica with L–5 radiculopathy. Dr. Seslowe did not make specific findings as to claimant's residual functional capacities, but concluded in a later report that as of May 17, 1977, plaintiff was still "totally disabled." (Tr. 113)

Additional medical evidence came from a consulting physician, Dr. Quattromani, who found that as of September 23, 1977, plaintiff suffered from scoliosis of the dorsal and lumbar spine, and osteoarthritis with discogenic pathology at C3–C4, C4–C5, C5–C6, and C6–C7. On the basis of these findings and a further assessment of claimant's functional capabilities, however, Dr. Quattromani concluded that plaintiff had only "a partial temporary disability and he can be rehabilitated." (Tr. 115) Contrary to plaintiff's testimony and to every other physician who has examined or treated plaintiff, Dr. Quattromani was of the opinion that plaintiff could walk three to four miles.

Plaintiff's treating physicians recommended a myelogram test and then if needed surgery, but the plaintiff refused this course of treatment because there was no guarantee of success and he feared the risks of surgery. Plaintiff currently wears a back brace which affords some relief, but his treating physicians uniformly agree that he has obtained maximum benefit from conservative treatment. ALJ Harap was of the opinion that, although plaintiff's impairments precluded him from returning to his prior physically strenuous work, they were not of a level of severity that precluded sedentary work. ALJ Harap also found that plaintiff's refusal to undergo surgery "recommended" by treating physicians was unreasonable and constituted willful failure

to follow prescribed treatment. (Tr. 8) This decision was affirmed in November 1978 by the Social Security Administration Appeals Council.

On appeal, this court remanded the case for further administrative proceedings because of (1) the heavy reliance of the ALJ on the report of the consulting physician, Dr. Quattromani, in light of the inconsistencies in that report; (2) the failure of the ALJ adequately to consider the evidence as submitted by plaintiff's treating physicians; (3) the failure of the ALJ to specify the availability of alternative employment which the plaintiff could perform. In addition, in the event the ALJ to whom the case was assigned on remand were to conclude that the plaintiff had been disabled as of September 1977, the remand ordered that the ALJ determine whether claimant's refusal to undergo a myelogram and/or spinal surgery under the circumstances of this case constituted a willful refusal of prescribed treatment within the meaning of 20 C.F.R. § 404.1518 (1980) (repealed prospectively in April 1983).

The case was assigned on remand to ALJ Ross who conducted a hearing on August 27, 1980. The ALJ issued a recommended decision on November 7, 1980, favorable to the plaintiff, in which he found that plaintiff's back condition remained severe and precluded him from performing any substantial gainful activity. The ALJ found that the plaintiff suffered from chronic lumbosacral discogenic disease with chronic sciatica and L–5 radiculopathy, scoliosis of the lumbosacral spine, concave to the right. Further, ALJ Ross stated, "[a]lthough there is some evidence in the file from a consultative physician which indicates that the claimant's disability is 'temporary' and that he may be able to engage in sedentary work, this conclusion goes against the numerous opinions of the other physicians of record." (Tr. 134)

On February 17, 1981 the Appeals Council found that ALJ Ross had used incorrect legal standards to determine that plaintiff's disability had not ceased when he (1) placed the burden of showing improvement in claimant's medical condition on the government, and (2) gave greater weight than the Council felt proper to the treating physicians' reports. Consequently the Appeals Council remanded the case to ALJ Ross to reevaluate the evidence and to issue a second recommended decision based upon the standards outlined in its order. This second remand order was vacated by the Appeals Council after eight months due to ALJ Ross' failure to hold new proceedings. Without the benefit of a further recommended decision by the ALJ, the Appeals Council issued a final determination that plaintiff's disability had ceased by September 1977.

This Court's remand of this case was ordered in part because a reading of the record demonstrated that the original ALJ had failed to give proper consideration to the medical reports of plaintiff's treating physicians. The remand order did not suggest that an ALJ could not reasonably have concluded either that plaintiff was no longer disabled as of September 1977 or that he continued to be disabled. The objective medical evidence can in fact be read to support either a finding of total disability or a finding that the claimant is capable of performing light or at least sedentary work. "Sedentary work" is defined in the Regulation as:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR § 404.1567(a). Dr. Seslowe, one of the claimant's treating physicians, concluded that claimant was still totally disabled as of May 13, 1977 on the basis of his examinations and diagnosis. Dr. Sheth, also a consulting physician, made a report on June 10, 1976 with diagnostic findings similar to Dr. Seslowe's, except that Dr.

Sheth concluded claimant was capable of walking three to four blocks, standing one hour at a time, lifting five to six pounds and sitting approximately one hour at a time. In addition, he found that plaintiff could grasp and manipulate normally. Dr. Sheth concluded that claimant "may only be able to do what is a very light desk-type of clerical work," (Tr. 109), an opinion appropriately qualified since sedentary work may require lifting up to ten pounds at a time.

In contrast, both Dr. Quattromani's report of September 23, 1977, and Dr. Biscaro's report (another treating physician) of July 26, 1978, contain findings consistent with a functional capacity for light work. "Light work" is defined in the Regulation as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR § 404.1567(b). Dr. Quattromani's findings differed from Dr. Biscaro's in that Dr. Quattromani found no atrophy and believed claimant capable of walking three to four miles. Dr. Biscaro found that claimant could walk three to four blocks and stand three to four hours. The Medical Vocational Guidelines of 20 CFR Part 404, Subpart P, Rule 202.18, Appendix 2, direct a finding of "not disabled" for a claimant found to have such capabilities at a given point in time. In *Heckler v. Campbell*, ___ U.S. ___, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983), the Supreme Court upheld the Secretary's use of these standardized guides "to improve both the uniformity and efficiency of this determination."

 In reviewing a final determination of the Secretary, the court is not to re-weigh the evidence, but to determine whether there is substantial evidence to support the Secretary's findings. *Rocker v. Celebrezze*, 358 F.2d 119, 121 (2d Cir. 1966). Substantial evidence means more than a mere scintilla, and is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *citing Consolidated Edison Co v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938). In assessing disability, factors to be considered are (1) objective medical facts; (2) diagnosis or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience. *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978). Furthermore, while the Secretary is bound by the opinion of treating physicians on disability in the absence of substantial evidence to the contrary, *Gold v. Sec'y of H.E.W.*, 463 F.2d 38 (2d Cir.1972); *Hankerson v. Harris*, 636 F.2d 893 (2d Cir.1980), the Secretary is not bound by a doctor's conclusion on the ultimate issue, 20 CFR 404.1527.

The record on the original appeal in this case indicated, however, that the ALJ had given little if any attention to the reports of the treating physicians, particularly to the substantial evidence in the record that supported plaintiff's claims. On remand, ALJ Ross, after properly considering the reports of plaintiff's treating physicians, found plaintiff disabled. Moreover, he closely questioned the claimant on his reasons for refusing the myelogram and surgery. The claimant testified that he felt that the uncertain benefit of surgery, attested to by his doctors, did not justify the substantial risks. He further stated that he refused the myelogram because he thought it was only "to prove that you need the operation." (Tr. 155) Without explicitly making a finding as to claimant's refusal to undergo a myelogram, the ALJ concluded that the claimant's refusal to

undergo surgery had not been unreasonable.

In rejecting Judge Ross' decision, the Appeals Council originally relied upon erroneous or irrelevant legal standards, and incorrectly attributed error to the ALJ. First, the Appeals Council may have been correct in concluding that the plaintiff bears the burden in contesting the termination of benefits previously awarded. *Memoli v. Califano,* 463 F.Supp. 578, 582 (S.D.N.Y.1978). *But cf. Schauer v. Schweiker,* 675 F.2d 55 (2d Cir.1982). The Secretary has never disputed, however, that plaintiff is incapable of returning to his prior work. Once a plaintiff establishes his inability to return to his prior work, the Secretary bears the burden of proving by substantial evidence that he can do some other work. *Decker v. Harris,* 647 F.2d 291, 295 (2d Cir.1981); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). Thus, in the circumstances of this case, this ground did not afford a basis for the Appeals Council's remand to the ALJ.

■ The second reason the Appeals Council originally remanded the case back to Judge Ross was a mistaken impression that Judge Ross, in favoring the report of the treating physician, was stating a general rule "to the effect that evidence from treating sources is necessarily more persuasive than the reports of consulting physicians." The Appeals Council found this standard "totally unacceptable." (Tr. 130) In fact, Judge Ross applied a standard well within the law in the Second Circuit. *See Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978). Judge Ross did not state or even imply that evidence from treating physicians is necessarily more persuasive. Rather, he ruled that "where the opinion of a consultative examiner, who examined the claimant on a one time basis, goes against the great weight of the medical evidence, the undersigned deems that the medical evidence of treating sources is entitled to greater weight and credibility than that of a consultative examiner." (Tr. 134)

■ Finally, the Appeals Council failed to explain how it originally reached the conclusion that plaintiff's refusal to undergo surgery or a myelogram was unreasonable, despite the ALJ's finding to the contrary. The language of 20 CFR § 404.1518 (1980) sets forth four requirements before a claimant's disability benefits can be terminated for the willful failure to follow prescribed treatment: 1) the impairment must have been amenable to treatment to restore the claimant's ability to work, 2) the treatment must have been prescribed, 3) the treatment must have been refused, and 4) the refusal must have been willful with no justifiable excuse. *Jones v. Heckler,* 702 F.2d 950, 953 (11th Cir.1983); *Schena v. Secretary of Health and Human Services,* 635 F.2d 15 (1st Cir.1980), *citing Smith v. Weinberger,* 394 F.Supp. 1002, 1008 (D.Md.1975). Findings as to each of these four criteria must be supported by substantial evidence to justify termination. *Jones v. Heckler,* 702 F.2d at 953. Defendant's initial Memorandum of Law at 15, states that "the Secretary concedes that plaintiff cannot at present return to his former strenuous jobs in construction, and might not be able to do so even following the recommended back surgery." Plaintiff explained his fear of surgery and of ending up in a wheelchair, or worse. Plaintiff met with a doctor who had himself undergone a similar operation which resulted in paralysis. Judge Ross, having heard and considered plaintiff's testimony, found his refusal reasonable, a conclusion supported by the reported cases. *E.g., Jones v. Heckler,* 702 F.2d 950 (11th Cir.1983), *Schena v. Secretary of Health and Human Services,* 635 F.2d 15 (1st Cir.1980); *Ratliff v. Celebrezze,* 338 F.2d 978 (6th Cir.1964).

When ALJ Ross failed to hold a timely hearing on remand, the Council proceeded to reappraise the medical evidence bearing upon plaintiff's ability to work as of September 1977 and found the consulting physicians' reports more convincing than the less particularized evaluations of the treating physicians. The Council in effect disregarded Judge Ross' credibility findings, as well as much of its own original opinion,

and reappraised the record as if the case had just been sent to the Council on the original remand. It then rejected plaintiff's claim, reasoning as follows:

It must also be noted that as early as October 1975, another physician, Dr. Lowenthal, remarked that there were "no physical or x-ray findings to suggest herniated disc. Much of the disability is related to disuse and emotional reaction." (Exhibit 22).

The Appeals Council notes that the findings of Dr. Lowenthal have been essentially affirmed by claimant's treating physicians. More definitive evidence was, however, obtained on September 23, 1977, in the nature of a comprehensive examination by Frank A. Quattromani, M.D. There was x-ray evidence showing, as before, scoliosis of the dorsal and lumbar spine, osteoarthritic changes and degenerative disc pathology at several levels of the cervical spine. The physician noted "voluntary rigidity of his (claimant's) actual back" and performed comparative range of motion studies to test the validity of the restrictions in accordance with the Regulatory Requirements, i.e. Section 1.00 B A6 of Appendix 1, Part A:

"... Alternative testing methods should be used to verify the objectivity of the abnormal findings, e.g., a seated straight-leg raising test in addition to supreme straight-leg raising test ..."

Dr. Quattromani ultimately concluded that the claimant "could walk alright, could stand for one or two hours ... could lift weight, could sit, can grasp and manipulate fine and gross objects." The doctor also stated that claimant has "a *partial* temporary disability and he can be rehabilitated." (Exhibit 27).

A further comprehensive examination on July 26, 1978, by Carla Z. Biscaro, M.D., a diplomat of the American Board of Orthopedic Surgeons, yielded positive findings, including limited range of motion, straight leg raising limited to 30 degrees bilaterally, some decreased sensation with nerve root distribution on the left, and ½" atrophy of the left calf. Dr.

Biscaro essentially reaffirmed, however, the functional capacity described by Dr. Quattromani, except that the orthopedic specialist's assessment was far more specific. Dr. Biscaro found that claimant could walk 3–4 blocks, stand 3–4 hours, *lift up to 25 pounds*, and sit intermittently for periods of 4 to 5 hours. (Exhibit 29).

No evidence from any other physician competes with these functional assessments of Dr. Quattromani and Dr. Biscaro for September 23, 1977 and July 26, 1978. According to section 404.1567(b) of the Regulations these assessments are consistent with a maximum sustained work capability for light work. As previously noted prior evidence has suggested even earlier that the claimant was able to perform such work. Where, as here, the Appeals Council has jurisdiction, the responsibility for deciding claimant's residual functional capacity rests with the Council. Based on the foregoing substantial medical evidence the Appeals Council now finds that as of September 23, 1977, the claimant had the maximum sustained work capacity for light work. Notably, the administrative law judge who conducted the original proceedings in this case and heard the claimant's testimony had reached essentially the same conclusion.

(Tr. 125) (emphasis in original)

The Council's analysis of the ambiguous and inconsistent medical evaluations in the record would satisfy the substantial evidence test were there no contradictory evidence other than that cited in the Council's discussion, particularly on the issues of pain and credibility. But the analysis fails to provide a proper basis for denying claimant his benefits in light of the evidence adduced at the intervening proceeding where plaintiff appeared in person and established to the ALJ's satisfaction that he cannot engage in any gainful employment. The record amply supports the ALJ's conclusion, in that the treating physicians' reports, supported by X-rays, contain strong evidence of serious, debilitating back prob-

lems, and the consultants' reports, in spite of internal contradictions and ambiguities, are consistent with such a finding. Plaintiff satisfied ALJ Ross, moreover, that his subjective symptoms were real, that he was "still in severe and intractable pain and clearly cannot perform substantial gainful activity on any sustained basis." (Tr. 134)

The Council recognized in its opinion on reconsideration that this case turns in large part on credibility. In discussing plaintiff's refusal to undergo a myelogram it stated:

Inasmuch as the Appeals Council finds that the claimant's disability ceased on September 23, 1977, because of his ability to engage in substantial gainful activity as of that date, it is unnecessary to make further specific findings concerning failure to follow prescribed treatment. Such a finding could not be readily made in any event because claimant has refused even to submit to the diagnostic procedure, i.e. myelogram, which his physicians have consistently required as necessary before the surgical procedure can be prescribed. The claimant's refusal to submit even to this generally accepted diagnostic procedure despite his persistent complaints of disabling discomfort and physical limitations in his back since 1974 is astonishing. Moreover, it casts some doubt on the credibility of his complaints, as has also been suggested by the findings of Dr. Quattromani and Dr. Lowenthal. In any event, the Appeals Council finds that the claimant's testimony has not credibly established that he was unable to perform light work, or at least sedentary work, as of September 1977.

(Tr. 126) ALJ Ross questioned claimant extensively about the location, extent, and severity of his pain. (Tr. 146–48) Since the medical evidence before Judge Ross contained objective findings capable of supporting a conclusion of either disability or non-disability, it is clear that in finding disability ALJ Ross believed claimant's testimony of debilitating pain, and that credibility played an important role in his decision. Reliance on a witness' testimony need not be express but may be implied

from the fact of the ALJ's finding of total disability. *See Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383 (6th Cir.1978).

An ALJ's conclusions of credibility carry considerable weight. *Brissette v. Schweiker,* 566 F.Supp. 626, 635 (E.D.Mo. 1983). Furthermore, as stated in *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979), "it has been established both in this Circuit and elsewhere, that subjective *pain* may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." (Emphasis in original.) Especially in cases where the "medical evidence is consistent with a painful disorder," credibility findings of the hearing officer must not be rejected on less than substantial evidence. *Beavers,* 577 F.2d at 387. The Appeals Council, and the Secretary, can conclude that a claimant's testimony is not credible, as the Secretary is entrusted with the duty of making all findings of fact. *See id.* at 387–88. As the governing statute, 42 U.S.C. § 405(g) states:

The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive....

Nevertheless, it is still this court's responsibility to determine if substantial evidence supports the Appeals Council's decision. As noted in *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951), in reviewing the evidence the court must take into account

that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case.

"If an Appeals Council decides to reject the credibility findings of an administrative law judge, or to disregard testimony which was clearly central to the administrative law judge's determination, it should do so expressly, identifying the considerations which led it to its conclusion." *Beavers v. Secretary of Health Education and Welfare,* 577 F.2d 383, 87 (6th Cir.1978); *see also Combs v. Weinberger,* 501 F.2d 1361 (4th Cir.1974).

■ The Appeals Council referred to statements in two consulting examiners' reports that tended to controvert a finding of total disability. Its conclusion that claimant's testimony was not credible was, however, based primarily on his refusal to undergo a myelogram test. The Council stated that it found plaintiff's refusal to undergo a myelogram "astonishing," and that it "cast some doubt on the credibility of his complaints." (Tr. 126) The Council cannot choose to reject the ALJ's implicit findings of credibility based on a claimant's refusal to undergo a myelogram without making an express finding that the refusal in a given case was unreasonable. To hold otherwise would, in effect, permit the Secretary to circumvent the protections afforded by 20 C.F.R. § 404.1518 (1980) and deny a claimant benefits on the ground of willful refusal to follow prescribed treatment even though the refusal was found to have been reasonable. ALJ Ross questioned the witness about his reluctance to undergo the myelogram and/or surgery and found his refusal reasonable, a finding supported by substantial evidence. The myelogram was recommended, not prescribed, to plaintiff in conjunction with possible surgery, and plaintiff declined the myelogram because he thought it was only for the purpose of determining what surgery might be indicated. The Appeals Council asserted that Dr. Seslowe "recommended a myelogram to establish the cause for the claimant's complaints." (Tr. 124) But those are not Dr. Seslowe's words. His report states that "a myelogram was suggested, and if positive, surgery." (Tr. 120) Dr. Sheth also suggested the need for a myelogram, but solely in connection with possible surgery: patient "may possibly need surgery, if there is considerable evidence of nerve root pressure." (Tr. 109) No evidence in the record establishes that any physician deemed a myelogram necessary to determine whether plaintiff had a herniated disc, or other back ailment, or otherwise to establish the cause for claimant's complaints. It may be that when a myelogram is prescribed to determine the exact nature of an impairment for purposes of determining eligibility for disability benefits, an applicant's refusal to accept one might be deemed either unreasonable or evidence of a lack of credibility. But before an applicant may be refused relief on this basis he must be told why the test is necessary despite his reasonable refusal to undergo surgery.

■ The history of this case is long and unfortunate, but the record remains uncomfortably inconclusive as to the fundamental question—whether the plaintiff was in fact disabled in September 1977. Plaintiff's testimony, if believed, clearly establishes a debilitating back injury which prevents him from pursuing any regular gainful activity. ALJ Ross apparently believed plaintiff's testimony that he is unable to sleep at night, which makes him tired all day long, that he can only walk short distances, and cannot go out at all in snowy or icy conditions. The Appeals Council reasonably analyzed the documentary evidence, and its views as to the relative value of the doctors' reports would ordinarily be controlling. But the Council improperly rejected the ALJ's credibility findings, as well as his conclusion that plaintiff's reluctance to undergo a myelogram was reasonable. A new hearing to determine disability is therefore necessary, at which an ALJ, guided by the Council's view of the relative strength of the medical reports, must determine plaintiff's credibility and capacity on a first-hand basis. The parties can agree to make the new hearing more meaningful by consolidating it with a hearing that includes more recent medical evidence, and by making clear whether a myelogram is needed to determine if plaintiff's condi-

tion was or is serious. But that course is in the Secretary's discretion.

Both the Secretary's and plaintiff's motions for judgment on the pleadings are denied. The decision of the Secretary is reversed and the case is remanded for a new hearing and decision, consistent with the rulings herein, as to whether plaintiff is eligible for disability benefits since September 1977.

SO ORDERED.