**Shirley A. MENDEZ, Plaintiff,**

**v.**

**Shirley S. CHATER, Commissioner Social Security Administration, Defendant.**

**Civil Action No. 95–cv–5345.**

United States District Court,
E.D. Pennsylvania.

July 9, 1996.

Steven M. Rollins, Law Offices of William C. Haynes, Lancaster, PA, for Plaintiff.

Charlotte J. Hardnett, U.S. Dept. of Health and Human Services, Office of Gen. Counsel, Region III, Margaret L. Hutchinson, and James A. Winn, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## ORDER

LOWELL A. REED, Jr., District Judge.

Now, this 9th day of July, 1996, after careful and independent consideration of the cross-motions for summary judgment, the plaintiff's response, the entire administrative record, and the Report and Recommendation of the Chief U.S.M. Judge, and the objections filed thereto, IT IS ORDERED that:

1. The objections are OVERRULED.

2. The Report and Recommendation is Approved and Adopted as the Opinion of the Court.

3. The plaintiff's motion for summary judgment is GRANTED.

4. The defendant's motion for summary judgment is DENIED.

5. This matter is REMANDED to the Commissioner of Social Security for a calculation and an award of benefits.

## REPORT—RECOMMENDATION

Filed June 18, 1996

POWERS, Chief Magistrate Judge.

The plaintiff seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381–1383c. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, I recommend that

plaintiff's motion be granted and defendant's motion be denied.

The plaintiff was born on December 2, 1951. (tr. 136). She left school at the age of thirteen (13) in the seventh grade after she became pregnant by a thirty-two (32) year old married man. (tr. 108). She subsequently took classes to qualify for a GED, but failed the test, receiving instead a certificate showing completion of the tenth grade. (tr. 100). She has a beautician's license, but has worked only one (1) day since 1991. (tr. 101). The shop manager told her that she was too nervous for the job. (tr. 101).

The plaintiff has a lengthy history of health problems, manifested by fatigue, weakness, and breathing difficulties. In recent years, she was diagnosed as suffering from granulomatous hepatitis[1] after undergoing a liver biopsy. (tr. 209). Her doctor, Berel Arrow, D.O., noted on August 1, 1991, that her abnormal chest x-ray suggested that her condition might be caused by sarcoidosis.[2] (tr. 211).

The diagnosis was confirmed by John Daly, M.D., after further studies. (tr. 218–19). Dr. Arrow prescribed Imuran[3] on December 3, 1991, when the plaintiff was unable to tolerate Prednisone.[4] (tr. 237). In a report to the Pennsylvania Bureau of Disability Determination on August 14, 1992, Dr. Arrow noted that although the sarcoidosis was in remission and that the plaintiff was currently not on medication for that condition, she continued to suffer from nausea, weakness, and joint pains as well as lower abdominal pain. (tr. 369–70). Dr. Arrow further stated that the plaintiff's only medication was Aldactone.[5]

The plaintiff was treated for acute pleurisy at the Community Hospital of Lancaster on September 14, 1993. (tr. 448–56). She was admitted to the Lancaster General Hospital on December 6, 1993, after suffering for two (2) months with increasing breathlessness on exertion, intermittent chills and fever, and a productive cough. (tr. 478). The plaintiff was treated for pneumonia through December 14, 1993 at the hospital. (tr. 462–586). The record of the plaintiff's mental impairment reveals that she began to take anti-anxiety medications including Valium[6], Serax[7], and Ativan[8] prescribed by her doctor as early as 1967, when she was fifteen (15) years old, and continuing through 1981. (tr. 298–99). In 1991, on two (2) occasions, Dr. Gary Samburg prescribed BuSpar[9] for anxiety and

1. Hepatic granuloma, often called granulomatous hepatitis, is not a true hepatitis. Their discovery in a liver biopsy most often reflects clinically relevant disease—usually a systemic disorder rather than primary liver disease. Sarcoidosis is the most important noninfectious cause. *The Merck Manual*, 914 (Sixteenth ed. 1992).

2. Sarcoidosis is a chronic, progressive, systemic disorder of unknown origin, involving almost any organ or tissue and characterized by the presence of inflammatory cells in all affected organs. *Dorland's Illustrated Medical Dictionary*, 1485 (27th ed. 1988).

3. Imuran is an immunosuppressive antimetabolite indicated for the management of severe, active rheumatoid arthritis. *Physicians' Desk Reference*, 1110 (50th ed. 1996).

4. Prednisone is a steroid drug used primarily for its potent anti-inflammatory effect in disorders of many organ systems. This type of steroid can cause profound and varied metabolic effects as well as modifying the body's immune responses. *Physicians' Desk Reference*, 2595 (50th ed. 1996).

5. Aldactone is indicated in the management of hyperaldosteronism, an abnormality of electrolyte metabolism as well as for hypertension in patients who cannot be adequately treated with other agents and in other conditions where diuretics do not provide an adequate response. *Physicians' Desk Reference*, 2414–15 (50th ed. 1996); *Dorland's Illustrated Medical Dictionary*, 45 (27th ed. 1988).

6. Valium is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety. *Physicians' Desk Reference*, 2183 (50th ed. 1994).

7. Serax is indicated for the management of anxiety disorders or the short-term relief of the symptoms of anxiety. *Physicians' Desk Reference*, 2810 (50th ed. 1996).

8. Ativan is indicated for the management of anxiety disorders or the short-term treatment of the symptoms of anxiety or anxiety associated with depressive symptoms. *Physicians' Desk Reference*, 2700 (50th ed. 1996).

9. BuSpar is indicated for the management of anxiety disorders or the short-term relief of the symptoms of anxiety. *Physicians' Desk Reference*, 737 (50th ed. 1996).

Prozac[10] for depression. The plaintiff discontinued the medication because of the side effects. (tr. 258–59). Physicians who have treated her over the years have reported that her physical complaints are "related to underlying psychosocial problems" (tr. 619) and exacerbated by anxiety and somatization.[11] (tr. 480).

On August 25, 1992, the plaintiff was examined by a psychiatrist, Donald Rynier, M.D., for the Pennsylvania Bureau of Disability Determination. (tr. 355–64). Doctor Rynier diagnosed the plaintiff as suffering from recurrent major depression. He described her prognosis as guarded and recommended active psychiatric treatment. (tr. 365). As to her ability to perform work-related activities, he reported that she had limited or no ability to deal with work stresses, function independently, maintain attention/concentration, behave in an emotionally stable manner, and execute complex job instructions. (tr. 362–63).

During her hospitalization for pneumonia in December, 1993, the doctors who treated her reported a history of depression, anxiety, and domestic problems. (tr. 599). Two (2) weeks after her discharge from the hospital, the plaintiff was seen for a follow-up appointment by W.G. Weiland, M.D. Dr. Weiland reported that the plaintiff's "persistent fatigue is mostly related to her underlying psychosocial problems" and prescribed Zoloft[12], advising her to try the drug for at least two (2) weeks and pointing out its possible side effects including headaches, dizziness, diarrhea, and nausea. (tr. 619).

The plaintiff returned for a reevaluation two (2) weeks later, at which time the attending physician noted that the plaintiff appeared to have used Zoloft only intermittently because of her concerns about becoming addicted. (tr. 617). A report of a later visit noted that the plaintiff was advised to continue taking Zoloft and to seek counseling.

In fact, the plaintiff had sought counseling previously at the Lancaster Guidance Center in December, 1992. (tr. 402). A therapist, Ethelmae McSparren, evaluated the plaintiff in January, 1993. Ms. McSparren noted that the plaintiff has a significant family history of depression and numerous somatic complaints. (tr. 401). Based on her observations and the plaintiff's history, Ms. McSparren made a diagnosis of dysthymia.[13] She recommended outpatient treatment, but the plaintiff failed to attend the therapy sessions. (tr. 397).

The plaintiff first applied for benefits on April 23, 1991, claiming inability to work because of fatigue, weakness, nausea, and pain. (tr. 136, 140, 153). Following the denial of her application both initially and upon reconsideration, the plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). (tr. 51–94). After the ALJ rendered his decision on February 27, 1993, denying the plaintiff's claim (tr. 376–87), she asked the Appeals Council to review the ALJ's decision.

On August 13, 1993, the Appeals Council granted the request for review under the substantial evidence provision of the Social Security Administration regulations pursuant to 20 C.F.R. § 416.1470, and remanded the case to another ALJ with instructions to conduct a more comprehensive evaluation of the plaintiff's mental impairment. (tr. 393–94).

The plaintiff, who was represented by counsel, and a Vocational Expert ("VE") testified at the hearing held before the second ALJ on September 13, 1994. (tr. 95–134).

10. Prozac is indicated for the treatment of depression. *Physicians' Desk Reference,* 920 (50th ed. 1996).

11. Somatization is a term in psychiatry for the conversion of mental experiences or states into physical symptoms. *Dorland's Illustrated Medical Dictionary,* 1546 (27th ed. 1988).

12. Zoloft is indicated for the treatment of depression. *Physician's Desk Reference,* 2217 (50th ed. 1996).

13. Dysthymia is a mood disorder characterized by depressive symptoms typically beginning in childhood or adolescence and pursuing an intermittent or low-grade course over many years or decades. The condition is frequently complicated by major depressive episodes with a return to the low-grade depressive baseline on recovery. *The Merck Manual,* 1593 (Sixteenth ed. 1992).

On January 25, 1995, the ALJ issued her decision denying benefits. (tr. 14–25). The Appeals Council subsequently denied the plaintiff's request for review of the ALJ's decision, concluding that provisions contained in 20 C.F.R. § 416.1470 for SSI claims under Title XVI of the Act do not provide any basis for granting plaintiff's request. (tr. 6–7). The ALJ's decision is, therefore, the Secretary's final decision. The plaintiff filed her present motion for summary judgment on March 4, 1996. The Commissioner filed a cross-motion for summary judgment on April 3, 1996. The plaintiff filed a reply to the Commissioner's brief on April 18, 1996.

The standard of review of cases before this Court is whether the decision of the Commissioner to deny SSI benefits is supported by substantial evidence. 42 U.S.C.A. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)); *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir.1989); *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981). Substantial evidence is "less than a preponderance, but must be such as a reasonable person would accept as adequate to support a conclusion." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir.1986) (citations omitted).

The Commissioner established a five (5) step sequential evaluation process in 20 C.F.R. §§ 404.1520, 416.920 (1995) to be used for determining whether a person is disabled within the meaning of the Social Security Act, 42 U.S.C.A. §§ 401–433, 1381–1383d. The first two (2) steps involve threshold determinations of whether the claimant is presently working and whether she has an impairment which meets the duration requirement and significantly limits her ability to work. *See* 20 C.F.R. §§ 404.1520(a)–(c); 416.909; 416.920(a)–(c) (1995). In the third step, the medical evidence of the claimant's impairment is compared to a list (the "listings") of impairments presumed severe enough to preclude any gainful work. *See* 20 C.F.R. Part 404, Subpart P, App. 1 (Part A) (1995). If the claimant's impairment matches or is "equal" to one (1) of the listed impairments, she qualifies for benefits without further inquiry. 20 C.F.R. §§ 404.1520(d); 416.920(d) (1995). If the claimant cannot qualify under the Listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do her own past work or any other work that exists in the national economy in view of her age, education, and work experience. If the claimant cannot do her past work or other work, she qualifies for benefits. 20 C.F.R. §§ 404.1520(e)–(f) and 416.920(e)–(f) (1995); *see also, Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987).

■ Application of these principles to the administrative record in this matter reveals that the Commissioner's decision to deny plaintiff SSI benefits is not supported by substantial evidence because the ALJ's opinion does not show a fair consideration of the evidence. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981); *Kaelin v. Heckler*, 637 F.Supp. 1103, 1104 (W.D.Pa.1986).

The ALJ found that the plaintiff "may have intermittent anxiety and depression, but that her emotional impairments are not severe and that she has not sought ongoing psychological treatment." (tr. 24).

Although the ALJ mentioned Dr. Rynier's report in the context of the Appeals Council's remand, she apparently accepted the view of the prior ALJ that the report was somehow internally inconsistent and contacted the psychiatrist for clarification of the report. (tr. 19). In fact, the Appeals Council directed that clarification was needed only if Dr. Rynier's reports were inconsistent with each other and the record as a whole. (tr. 393).

The record, however, does not contradict Dr. Rynier's findings, nor is there any internal inconsistency in his report. Other physicians who have treated the plaintiff have confirmed that emotional problems have either caused or contributed to her physical complaints. (tr. 480–81, 618–19). Drs. Samburg and Weiland prescribed anti-anxiety and anti-depressive medication. (tr. 258–59, 619).

■ In order to lose entitlement to benefits for refusal to follow prescribed treatment [14], the refusal must be willful and without a justifiable excuse. *Schena v. Secretary of Health and Human Services*, 635 F.2d 15 (1st Cir.1980). The plaintiff has been found to suffer from a mental illness. Although she has discontinued prescribed medications, any noncompliance on her part could have been a result of her mental impairment and, therefore, neither willful nor without a justifiable excuse. *See Sharp v. Bowen*, 705 F.Supp. 1111, 1124 (W.D.Pa.1989).

■ When Dr. Rynier was unable to provide further information because of the passage of time, the plaintiff was sent to John Tardibuono, Ed.D., who is not a psychiatrist, for evaluation. (tr. 594–98). Dr. Tardibuono reported that the plaintiff has only fair ability to follow work rules, deal with work stresses, function independently, maintain concentration, understand complex instructions, behave in an emotionally stable manner, and demonstrate reliability. (tr. 596–97). Dr. Rynier had found that the plaintiff's restrictions in these areas were more pronounced. (tr. 355–64). The opinion of a medical specialist is entitled to greater deference than a conflicting opinion by a non-specialist. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993); *Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1161 (3d Cir.1988) (error to reject opinion of only psychiatrist to examine plaintiff); 20 C.F.R. § 416.927 (1995).

The ALJ also mischaracterized the plaintiff's testimony regarding her daily activities, commenting that the ability "to care for her eight (8) year old child, prepare meals, perform volunteer work at a local school, and perform some housecleaning ... would not be inconsistent with the capacity for light work activity." (tr. 21). In describing the extent of her daily activities, the plaintiff testified that even on a good day, she feels tired, weak, and nauseous and has pain in her right leg. (tr. 103). She lives with her mother and her daughter-in-law comes daily to help care for the plaintiff's daughter. The Amish help with the housework and she buys microwaveable food for meals. (tr. 106–07).

She used to volunteer at school, but has not done so for a year. (tr. 108).

■ The ALJ's finding that "the testimony of the [plaintiff] is not credible when viewed in the light of the medical and other evidence of record" improperly ignores the abundant medical evidence that the plaintiff suffers from a variety of well-documented physical and mental impairments which can cause her symptoms. An ALJ is not free to set her own expertise against that of physicians presenting competent medical advice. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir.1983).

When the ALJ presented to the VE a hypothetical which assumed an ability to do light or unskilled sedentary work of a low stress nature, avoiding dust, fumes, odors, and pollutants, the VE stated that there were jobs in the local economy that the plaintiff could perform. (tr. 128–29). However, when the VE was asked to consider Dr. Rynier's report, she said that his conclusions about the plaintiff would preclude work. (tr. 131).

Finally, the ALJ's decision is fundamentally flawed because it contains no rationale manifesting how she reached her conclusions in her analysis of the "B" criteria of the Psychiatric Review Technique Form. That omission is a major violation of both Third Circuit law and the Commissioner's own regulations. *Woody v. Secretary of Health and Human Services*, 859 F.2d 1156, 1159 (ALJ must discuss evidence considered in reaching conclusions expressed on form); 20 C.F.R. § 404.1520a(c)(4) (1995).

The ALJ's finding that plaintiff is not disabled is not supported by substantial evidence. She has not given proper weight to such considerations as plaintiff's subjective complaints of fatigue, dizziness, nausea, and pain, the reports of her treating physicians, the combination of her impairments, and the opinion of the VE. The record is sufficiently developed and substantial evidence on the record as a whole indicates that the plaintiff

---

14. *See* 20 C.F.R. § 404.1530 (1995).

is disabled and entitled to benefits. *Podedworny v. Harris,* 745 F.2d 210 (3d Cir.1984).

Accordingly, I make the following

### RECOMMENDATION

Now, this 18th day of June, 1996, IT IS HEREBY RECOMMENDED that the plaintiff's motion for summary judgment should be GRANTED and this matter be REMANDED for a calculation and an award of benefits. The Secretary's motion should be DENIED.