Sandra E. BRASHEARS 436–86–2245

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration.**

**Civil Action No. 98–1588.**

United States District Court,
W.D. Louisiana.

Sept. 24, 1999.

Randal L Coon, Shreveport, LA, for plaintiff.

John A Broadwell, U S Atty's Office, Shreveport, LA, for defendant.

#### *JUDGMENT*

WALTER, District Judge.

For the reasons assigned in the Report and Recommendation of the Magistrate Judge previously filed herein, and having thoroughly reviewed the record and concurring with the findings of the Magistrate Judge under the applicable law;

**IT IS ORDERED** that this case is **RE-MANDED**, pursuant to sentence six of 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration to re-

ceive new evidence regarding the reason for Plaintiff's non-compliance with her prescribed medication and for other proceedings consistent with 20 C.F.R. § 404.1530. In accordance with § 405(g), the Commissioner shall, after hearing such additional evidence and either affirming or modifying the prior decision, file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the action was based.

## REPORT AND RECOMMENDATION

PAYNE, United States Magistrate Judge.

Sandra E. Brashears ("Plaintiff") applied for Supplemental Security Income payments based on an alleged inability to work beginning September 1, 1994 due to paranoid schizophrenia, diabetes, hypertension and abdominal problems. The application was denied initially and on reconsideration. A hearing was then held before Administrative Law Judge ("ALJ") Nancy J. Griswold who also denied the application. The Appeals Council found no basis to review that decision. Plaintiff then filed this appeal. For the reasons that follow, it is recommended that the matter be remanded to the Commissioner to receive new evidence regarding the reason for Plaintiff's non-compliance with her prescribed medication.

### The Testimony

The Plaintiff, who was born in 1949, was 47 years old at the time of her hearing. She testified that she has a high school education and past work experience as a hospital admitting clerk and as a sitter in a private home. She complained of a variety of problems, including back pain, shoulder pain and pain related to an ankle injury suffered three months before the hearing. Her principal problems were diabetes, high blood pressure and psychiatric problems. Plaintiff testified that her several medications usually work but she sometimes forgets to take them. She estimated that she had been hospitalized for psychiatric problems 12–14 times, beginning in the early 1970's. Her most recent hospitalization came after she ran out of medication. Despite her problems, Plaintiff is able to do housekeeping chores such as sweeping and vacuuming, and she takes care of her own personal needs. She estimated that she could lift 10 or 15 pounds. (Tr. 34–57)

### Medical Records

The medical records reflect that Plaintiff has a chronic history of mental illness characterized by paranoid delusions and auditory hallucinations. She has been hospitalized at Brentwood, Caddo Oaks, Central Louisiana State Hospital and LSU Medical Center at various times. The specific diagnosis is chronic paranoid schizophrenia. Medical records from LSU Medical Center and the Shreveport Mental Health Center document some of the more recent hospitalizations and history.

In September of 1994 Plaintiff was admitted on an Order of Protective Custody at the request of her mother. Plaintiff had been talking with herself, hearing voices and driving recklessly. She had instructed her son, who does not have a driver's license, to drive her to the hospital as fast as he could, ignoring traffic signals, just to see how well and how fast he could drive in case of an emergency. She also had delusions that the Ku Klux Klan was after her. She admitted to not being compliant with her medications. She was placed back on medication and within a few days denied auditory or visual hallucinations. She was discharged after about one week. (Tr. 121–22)

Plaintiff was again admitted on an Order of Protective Custody in May of 1995. She had been non-compliant with her medication since the previous December. When admitted, she was actively hallucinating and delusional, and it was reported that she had been wandering aimlessly and threatening her mother. (Tr. 117) Plaintiff was discharged after about two weeks of being back on her medication. The discharge summary did note, however, that Plaintiff "still somewhat has her own ideas

on how she should take the medication." (Tr. 118–19)

Another Order of Protective Custody resulted in Plaintiff being admitted in November of 1995 for a two-week stay. Again, she was off her medication and had become disoriented and caused disturbances. She voluntarily took oral Prolixin and showed much improvement but totally refused Prolixin Decanoate. Her doctor wanted her to take it but he did not believe that Plaintiff was sick enough to force the medication. (Tr. 164–65)

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support · a conclusion." *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir.1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir.1988).

**Analysis of the ALJ's decision**

The ALJ found that Plaintiff does suffer from diabetes and high blood pressure, but they are both controlled by medications and neither has caused end organ damage. Plaintiff does not complain of those findings on appeal, and they are supported by the medical records. Plaintiff has also foregone challenge to the ALJ's findings that her other general aches and pains fail at Step 2 of the familiar five-step sequential analysis because they are merely slight abnormalities that would have only a minimal effect on the ability to engage in work activity. *See Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985) (establishing the Step–2 standard).

■ Plaintiff's brief, when the boilerplate is stripped away, consists of a curso-ry discussion of her condition and a conclusory argument that she is disabled because of her psychiatric problems. The issue was preserved for judicial review when it was presented to the Appeals Council. (Tr. 7–8, 181); *Paul v. Shalala,* 29 F.3d 208 (5th Cir.1994). The ALJ found that Plaintiff had been diagnosed with chronic paranoid schizophrenia, but found that:

> exacerbations of her schizophrenia occur only when she is non-compliant with medications. She functions quite well as long as she takes medication as evidenced by the clinical notes from Shreveport Mental Health Clinic.

(Tr. 17) The ALJ did not wholly discredit the claim of problems related to the schizophrenia. She found that the mental illness did impose significant non-exertional limitations that interfere with Plaintiff's ability to have regular or intimate contact with the public under conditions of stress and imposes a slightly reduced ability to relate to coworkers. (Tr. 17–18) The ALJ further found that Plaintiff could not return to her past relevant work because of those limitations. *Id.*

The ALJ then looked to the testimony of Vocational Expert ("VE") Charlotte Huddleston to determine at the fifth step whether Plaintiff was capable of performing other work that is available in the economy. The VE was asked to assume a residual functional capacity for a full range of all work, reduced by the limitations on interaction with the public and coworkers that were described above. The VE identified several jobs such as house sitter, housekeeper, fingerprint clerk, and blood donor unit assistant that a person with Plaintiff's abilities and limitations should be able to perform. (Tr. 171–77) Based on that response, the ALJ found that Plaintiff was not disabled. (Tr. 19)

When Plaintiff appealed to the Appeals Council, she attached to her Request for Review of Hearing Decision a letter from a psychiatrist and a mental health clinical social worker who both treated Plaintiff at

the Shreveport Mental Health Center. They wrote, in pertinent part, as follows:

> It is believed that [Plaintiff's] psychiatric symptoms worsen when she is faced with a stressful situation which leads to inpatient psychiatric treatment. It is also our opinion that [Plaintiff] is not capable of handling full or part-time employment. She has been compliant with treatment on a regular basis, but it should be noted that as [Plaintiff's] psychotic symptoms worsened, she will become non-compliant with medication. This type of behavior is consistent with her mental illness. Please reconsider [Plaintiff] for SSI/Medicaid benefits.

(Tr. 7, 181) The Appeals Council, without explanation, concluded that neither this nor other evidence of record provided a basis for changing the ALJ's decision.

There is evidence, as shown above, that most of Plaintiff's problems occur when she is not taking her medication. However, other than the letter submitted to the Appeals Council, there does not appear to be any evidence in the record as to whether Plaintiff does not take the medicine because of rational choice or even mere neglect committed while in a treated state, or whether the non-compliance is caused by the psychotic symptoms themselves. That issue requires further examination.

"In order to get benefits, [the claimant] must follow treatment prescribed by [her] physician if th[e] treatment can restore [her] ability to work." 20 C.F.R. § 404.1530(a). If the claimant does not follow prescribed treatment without a good reason, she will not be found disabled. § 404.1530(b). When determining whether the claimant has an acceptable reason for failure to follow prescribed treatment, the ALJ must consider the claimant's limi-

tations, including mental limitations. § 404.1530(c).

■ Courts have found that non-compliance that is the result of a mental impairment may be a justifiable excuse. *See Mendez v. Chater,* 943 F.Supp. 503, 508 (E.D.Pa.1996); *Sharp v. Bowen,* 705 F.Supp. 1111, 1123–24 (W.D.Pa.1989) (diabetic who injected insulin into his pillow and ate junk food rather than prescribed diet did so because of severe personality disorder, providing justifiable cause for non-compliance); and *Social Security: Right to Disability Benefits as Affected by Refusal to Submit To, or Cooperate In, Medical or Surgical Treatment,* 114 A.L.R.Fed. 141, § 10 (1993) (discussing noncompliance with treatment of psychological and psychiatric problems). *See also Lovelace v. Bowen,* 813 F.2d 55, 59–60 (5th Cir.1987) (case remanded because ALJ did not make fact findings as to whether it was possible or impossible for obese claimant to remedy weight as recommended by physicians) and *Scott v. Heckler,* 770 F.2d 482, 486–87 (5th Cir. 1985) (same). *Scott* also noted that "[a]lcoholism may be considered a disabling impairment despite the fact that a doctor has ordered the alcoholic to stop drinking." *Id.* Similarly, chronic paranoid schizophrenia may be disabling despite the fact that a doctor has ordered the schizophrenic to take medicine. Each case depends on its individual facts, not a per se rule. *Lovelace, supra* and *Benedict v. Heckler,* 593 F.Supp. 755, 758–61 (E.D.N.Y.1984).[1]

The only medical evidence regarding why Plaintiff is non-compliant was submitted when the case was before the Appeals Council. "[W]here the Appeals Council considers new evidence but declines to re-

---

1. Failure or refusal to comply with prescribed treatment is tested under a reasonableness standard. In addressing the standard with respect to mentally ill claimants, *Benedict* noted: "Obviously, the situation is drastically altered when dealing with those plaintiffs with mental impairments. The 'reasonable man' standard ... is clearly not applicable to those persons who are not 'reasonable.'

Someone who is truly paranoid or who is hallucinating, someone who may well believe that doctors 'are out to get him' for no good reason is unlikely to accept treatment prescribed by doctors. To deny this person benefits for this reason, because he is not acting under a 'reasonable fear' mocks the idea of disability based on mental impairments." 593 F.Supp. at 761.

view a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify or reverse the ALJ's decision." *Cline v. Commissioner,* 96 F.3d 146, 148(6th Cir. 1996). *See* 20 C.F.R. §§ 404.970(b) and 404.976(b) (Appeals Council may hear new evidence only if new and material and relates to time on or before date of ALJ's decision); and 20 C.F.R. § 404.981 (ALJ's decision is final if Appeals Council denies request for review). The court can, however, remand the case in light of the evidence if the claimant convinces the court that the evidence is new and material, and that there was good cause for not presenting it to the ALJ. *Cline;* 42 U.S.C. § 405(g).

Counsel makes no specific argument regarding any of these factors, but does make a conclusory, alternative request that the court remand the case for development of the record in consideration of the recent evidence from mental health professionals that Plaintiff's noncompliance may be beyond her control. Despite counsel's lack of specific argument, the court finds that the evidence does warrant a remand. The evidence is certainly material.[2] It is also new and there is good cause for not presenting it earlier because prior to the ALJ's decision there was no reason for Plaintiff's physicians to have addressed the issue. It is quite understandable that the medical records would not be very concerned with the reason that Plaintiff was not taking her medicine, although the issue is quite relevant to these legal proceedings. Similarly, Plaintiff could not have easily known prior to the ALJ's decision that she should present evidence on this issue. Because (1) the ALJ's decision relies heavily upon the non-compliance, (2) the record before the ALJ did not adequately address the reason for non-compli-

ance and (3) new evidence indicates that Plaintiff may have a reasonable excuse for non-compliance, remand is in order.

Accordingly,

**IT IS RECOMMENDED** that this case be **REMANDED,** pursuant to sentence six of 42 U.S.C. § 405(g) to receive new evidence regarding the reason for Plaintiff's non-compliance with her prescribed medication and for further proceedings consistent 20 C.F.R. § 404.1530 and this report and recommendation.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected—to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.,* 79 F.3d 1415 (5th Cir.1996) (en banc).

Aug. 18, 1999.

---

2. Evidence is material if has probative value and is relevant. *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). To be relevant, the new evidence must relate to the time period for which benefits were denied and cannot concern evidence of later acquired

disability or subsequent deterioration of a previously non-disabling condition. *Bradley v. Bowen,* 809 F.2d 1054, 1058 (5th Cir.1987) and *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir.1985).