Lev **TALANKER**, Plaintiff,

v.

Jo Anne B. **BARNHART**, Commissioner of Social Security, Defendant.

**No. 05 CV 4629(ARR).**

United States District Court, E.D. New York.

Feb. 28, 2007.

Lev Talanker, Brooklyn, NY, pro se Plaintiff.

Zachary A. Cunha, United States Attorneys Office, Brooklyn, NY, for Defendant's.

*OPINION AND ORDER*

ROSS, District Judge.

Plaintiff Lev Talanker, proceeding *pro se*, brought this action pursuant to 42 U.S.C. §§ 405(g), seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying him Supplemental Security Income ("SSI") for the period prior to August 1, 1994. Plaintiff initiated this action by complaint filed on September 21, 2005. Defendant has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The court, for the reasons explained below, denies the Commissioner's motion, reverses the portion of the Commissioner's decision finding plaintiff ineligible for benefits for the time period between April 1, 1993 and July 31, 1994, and remands the case to the Commissioner solely for the calculation of benefits.

**BACKGROUND**

Plaintiff applied for SSI benefits on March 8, 1993, (R. 24)[1], alleging disability based on a "nervous condition" that began in 1992. (R. 70–73.) Plaintiff's application was denied on August 23, 1993. (R. 83) Plaintiff exhausted his administrative remedies (R. 96, R. 103) and appealed the Commissioner's denial of benefits to the Eastern District of New York on July 17, 1995. By stipulation dated May 29, 1996, plaintiff's claim was remanded to the Commissioner for further administrative proceedings. *See Talanker v. Chater*, No. 95 Civ. 2833 (E.D.N.Y. May 29, 1996) (order granting stipulation).

On remand, the Appeals Council received additional medical evidence from plaintiff's treating physicians. (R. 175.)

On October 23, 1996, the Appeals Council vacated the Commissioner's denial of benefits and remanded to an Administrative Law Judge to update the record and for reconsideration in light of all the evidence in the record. (R. 175–176.) The Appeals Council further noted that the Social Security Administration had granted a subsequent SSI application by Mr. Talanker, finding him eligible for benefits as of April 12, 1996, the date of that application (R. 176.)

On March 18, 1997, a hearing was held before Administrative Law Judge Michael London. Plaintiff was represented by Sara Myers, an attorney with the New York Legal Assistance Group. At the hearing, Ms. Myers filed a handwritten amendment to the disability onset date which read:

> At this time, we would like to amend the onset date for Mr. Lev Talanker to *August 8, 1994*, whereupon he was diagnosed with schizophrenia and prescribed Stalazine.
>
> Mr. Talanker understands this agreement to amend the onset date to correctly reflect his condition.

(Letter from Sara Myers (March 18, 1997), *submitted as* Ex. B–14) (R. 184.) In a decision dated May 22, 1997 ("1997 ALJ decision"), ALJ London determined that plaintiff was disabled within the meaning of the Social Security Act as of August 1, 1994. (R. 266.) In determining the onset date, the ALJ credited the August 24, 1994 report of Dr. Lyudmila Lvov, a treating physician. (R. 166–70.) Based on this report, which the ALJ found to be corroborated by plaintiff's testimony and a report from a consultative examination in January 1997, the ALJ determined that plaintiff

---

1. "R." refers to the administrative record filed with the court by defendant Commissioner.

had a psychiatric condition that worsened until it became disabling in August 1994. (R. 263.) Accordingly, the Social Security Administration paid plaintiff $14,192 in retroactive benefits. (R. 224.)

Mr. Talanker filed a request for review of the ALJ's decision on September 26, 1997, contending that the onset date of his disability should be March 8, 1993, the date of his application for benefits, not August 1, 1994. (R. 211.) Although the Social Security Administration allowed him to file his request late (R. 212), the Appeals Council failed to review his claim. (R. 251.) After plaintiff received a notice in November 1998 that his benefits were being increased due to cost of living adjustments (R. 219), he filed another request for reconsideration, alleging that the amount provided was inadequate. (R. 228–31.) In plaintiff's letter, he denied amending his disability onset date at the hearing to August 1, 1994 and claimed that he never saw or signed the letter introduced at the hearing. (R. 230.) In addition, he argued that his disability onset date should instead be August 1, 1984 and requested damages for pain and suffering caused by the delay of over four years in obtaining a favorable decision. (R. 229–31.) Mr. Talanker's request for reconsideration was denied on March 4, 1999.

At plaintiff's request, a hearing was held on April 13, 2000 before ALJ William Kirchgaessner ("2000 ALJ decision"). At the hearing, plaintiff testified that he became disabled in 1992 and not 1984. (R. 208–09.) By decision dated May 26, 2000, ALJ Kirchgaessner denied Mr. Talanker's claim for retroactive benefits for any period prior to August 1, 1994. The ALJ found Mr. Talanker to be ineligible for benefits between the dates of August 1984 and March 8, 1993 because the Social Security Act and Regulations do not allow benefits to be awarded for any date prior to the filing of

an SSI application. (R. 195.) The ALJ also determined that he could not review Mr. Talanker's claim for benefits for the period between March 8, 1993 to August 1, 1994 because plaintiff's appeal of the 1997 ALJ decision was still pending before the Appeals Council. (*Id.*) The Appeals Council denied plaintiff's request for review of the 2000 ALJ decision (R. 185–86), and plaintiff subsequently appealed to the Eastern District of New York.

By order dated August 11, 2004, the Honorable Sterling Johnson granted defendant's motion to remand for further administrative proceedings to determine whether plaintiff was entitled to benefits retroactive to August 1, 1984. *See Talanker v. Chater,* No. 03 Civ. 1735 (E.D.N.Y. Aug. 11, 2004) (memorandum and order). On July 23, 2005, the Appeals Council denied Mr. Talanker's request for review of the 1997 ALJ decision, finding it to be reasonable and consistent with the record. (R. 251–52.) Plaintiff timely filed the instant action appealing the Commissioner's decision.

## DISCUSSION

### A. STANDARD OF REVIEW

#### 1. *SSA Evaluation of Disability*

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered "disabled" if her impairment is of such severity that she is unable to perform her previous work and, given her age, education, and work experience, she is unable to engage in any other type of substantial gainful employment in the na-

tional economy. *See* 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is disabled, the Commissioner must consider both objective and subjective factors, including "objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain and disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience." *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980) (citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) she is unable to engage in substantial gainful activity by reason of a physical or mental impairment expected to result in death or that has lasted or could be expected to last for a continuous period of at least twelve months; and (2) the existence of such an impairment is demonstrated by medically acceptable clinical and laboratory techniques. 42 U.S.C. §§ 423(d), 1382(a); *see also Shin v. Apfel*, No. 97 Civ. 8003, 1998 WL 788780, **5–6, 1998 U.S. Dist. LEXIS 17755 at *15–16 (S.D.N.Y. Nov. 12, 1998) (citing cases).

The SSA has promulgated a five step process for evaluating disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] The Second Circuit has characterized this procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third

inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience ... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam)). The claimant has the burden of establishing disability at the first four steps of this analysis. At the fifth step, however, the burden shifts to the Commissioner, who must establish that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa*, 168 F.3d at 77; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996).

## 2. *Standard of Judicial Review*

This case comes to the court for review of the Commissioner's decision that the plaintiff was not disabled until August 1, 1994. The court's role in reviewing decisions of the SSA is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making her determination and whether that determination is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c);

---

**2.** The regulations governing disability determinations for disability insurance benefits (DIB) and for supplemental security income (SSI) are identical. Citations in the remainder of this opinion are to the DIB regulations found in Part 404 of the Social Security regulations. For each DIB regulation located at 20 C.F.R. § 404.15xx, an analogous SSI regulation can be found at 20 C.F.R. § 416.9xx.

*Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Donato v. Secretary,* 721 F.2d 414, 418 (2d Cir.1983).

■ The court first reviews the Commissioner's decision to determine whether she applied the correct legal standards. *See Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999). It is well established that the Commissioner's decision must be reversed if she failed to apply the correct legal standards in finding that the plaintiff is not disabled. *See, e.g., Pollard v. Halter,* 377 F.3d 183, 188–89 (2d Cir.2004); *Johnson,* 817 F.2d at 986; *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984). Next, the court examines the record to verify that the Commissioner's determination is supported by substantial evidence. Substantial evidence is defined as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

■ Administrative decisions regarding claimants' eligibility for disability benefits are "surprisingly vulnerable to judicial review," due to the Commissioner's creation—and the courts' subsequent enforcement—of various procedural obligations to which ALJs must adhere. *Molina v. Barnhart,* No. 04 Civ. 3201, 2005 WL 2035959, **5–6, 2005 U.S. Dist. LEXIS 17981, at *21 (S.D.N.Y. Aug. 17, 2005). An ALJ's failure to adhere to any of these regulations constitutes legal error, permitting reversal of the administrative decision. *Id.; see also Toribio v. Barnhart,* No. 02 Civ. 4929, 2003 WL 21415329, **2–3, 2003 U.S. Dist. LEXIS 10367, at *7 (S.D.N.Y. Jun. 28, 2003).

## B.  Plaintiff's Claims

### 1.  *Claim for award of benefits from August 1984 to April 1993*

■ In the various stages of Mr. Talanker's appeal of the 1997 ALJ decision finding him to be disabled as of August 1, 1994, plaintiff has alleged different disability onset dates. The disability onset dates alleged by plaintiff include August 1984 (R. 229), 1992 (R. 70, 208), and March 1993 (R. 211). However, under the Social Security Act and the Regulations of the Commissioner of Social Security, the earliest date that SSI benefits may be awarded is the first day of the month following the date the application was filed. 42 U.S.C. 1382(c)(7); 20 CFR 416.335. Mr. Talanker first filed a claim for SSI benefits on March 8, 1993 (R. 70–73), so April 1, 1993 is the first possible date that he could have become eligible for benefits. Therefore, ALJ Kirchgaessner's decision of May 26, 2000 determining that plaintiff was not entitled to benefits for any time period prior to the date his application was submitted (*see* R. 195) is correct as a matter of law. Accordingly, Mr. Talanker's claim for SSI benefits for the period prior to April 1, 1993 is dismissed.

### 2.  *Claim for award of benefits from April 1993 to July 1994*

Neither party disputes that Mr. Talanker was disabled as of August 1994 nor that he had serious psychological impairments at the time he applied for SSI benefits. The primary issue before the court is whether ALJ London correctly identified August 1994 as the date in which Mr. Talanker's psychological impairments became disabling. The Commissioner argues that August 1994 was the correct date for disability onset because (1) Mr. Talanker agreed to amend his disability onset date to this time period during the 1997 hearing before ALJ London, and (2) the medical evidence in the record supports ALJ London's decision. I find that the record is inconclusive as to whether Mr. Talanker consented to the date change

and that ALJ London's decision as to the disability onset date was not supported by medical evidence. Therefore, I reverse the Commissioner's decision. Additionally, I find that remand for further administrative proceedings would serve no purpose, because the record is sufficiently complete to compel a determination that plaintiff's mental impairments were disabling as of the date his SSI application was submitted.

### a) Amendment of the Onset Date

Mr. Talanker claims that he never agreed to amend his disability onset date to August 1994 and, therefore, he should be considered eligible for benefits for the period from April 1, 1993 until July 31, 1994. (Pl.Mem.2–3.) Plaintiff does not dispute that his counsel signed a document at the March 18, 1997 hearing before the ALJ amending plaintiff's disability onset date to August 1, 1994. (*See* R. 184.) However, plaintiff contends—despite counsel's statement in the document that Mr. Talanker understood the agreement (*id.*)— that he never consented to the change. In plaintiff's Memorandum of Law filed on April 27, 2006, he states:

> The onset date of August 1, 1994 was selected for Plaintiff by ALJ–2 and the council [sic] for this Plaintiff. It was done during the time of the Hearing. Special meeting between ALJ and the council [sic] was conducted without Plaintiff['s] presence. This meeting was conducted behind close[d] doors, inside the ALJ–2 room. No reason for August 1, 1994 selection, no time for consideration, and no time to sign the document shown on (DA–184) was provided to the Plaintiff.

(Pl.Mem.3.)

■ No evidence in the record contradicts Mr. Talanker's assertions. The record establishes that an off the record discussion regarding the disability onset date

took place but does not indicate whether Mr. Talanker was present. (*See* Supp. R. 273.) During the subsequent proceedings on the record, the ALJ directed Ms. Myers to include a statement that she had explained the amended onset date to her client and that he understood it. (*See id.*) Ms. Myers also stated that she had discussed with her client testifying using the amended onset date. (*See id.* at 274.) Mr. Talanker was not asked on the record whether he agreed with the amended onset date. (*See id.*) Moreover, it appears from the record of the proceeding that Mr. Talanker may have had some difficulty in following the events taking place at the hearing and understanding that Ms. Myers was representing him. When asked by the ALJ whether he had discussed the case with his attorney, Mr. Talanker responded "yes," but it appears he looked unsure because the ALJ asked "Is that correct?" (*See id.*) Mr. Talanker then clarified, "[t]he girl," presumably referring to Ms. Myers, and the ALJ responded, "Yes. That's your lawyer." (*See id.* at 274–75.) Later in the proceeding, when the ALJ attempted to ask Mr. Talanker questions regarding whether his condition deteriorated around August 1994, Mr. Talanker provided no indication that he understood what the ALJ was asking him. (*See id.* at 277–78.)

The court takes into consideration the general presumption that, since Ms. Myers was acting in the capacity of Mr. Talanker's counsel, she was acting as his agent and filed the stipulation on his behalf. *See In Re: Artha Management Inc.*, 91 F.3d 326, 329 (2d Cir.1996). However, here, Mr. Talanker had already been determined to have been suffering from a disabling mental illness at the time of the hearing and appears to have faced difficulty in understanding the proceedings. Accordingly, the court finds that the record is

inconclusive as to whether Mr. Talanker knowingly consented to the amended onset date identified by his attorney.

Moreover, Social Security Ruling 83–20 requires the date of onset of the disability to be established based on legitimate medical evidence. The ruling, which is binding on the Social Security Administration, provides that:

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

*Id.* The ruling goes on to recognize that establishing the precise date of onset may require inferences, but it establishes that inferences made shall be based on an informed judgment that has a "legitimate medical basis." Therefore, even if Mr. Talanker consented to the entry of the stipulated date of onset, the ALJ is required to ensure that the date selected had a legitimate medical basis.

### b) Medical Basis for Identified Onset Date

Social Security Ruling 83–20 recognizes that establishing the onset date of a disability will require "an informed judgment of the facts in the particular case," but emphasizes that "[t]his judgment, however, must have a legitimate medical basis." The ruling provides that the ALJ should call on a medical advisor to testify at the hearing in situations when onset must be

inferred. The ruling also states that, when information in the file indicates that additional medical evidence concerning onset is available, that evidence should be secured before the ALJ makes inferences as to onset. The ruling requires the ALJ to provide a "convincing rationale" for the date selected.

■ ALJ London's conclusion that the appropriate onset date for Mr. Talanker's disability was August 1994 does not appear to be consistent with the medical evidence in the record. ALJ London found that Mr. Talanker's psychiatric condition "significantly deteriorated, and became one of a disabling nature, in August 1994." (R. 263.) In identifying the onset date of plaintiff's disability, ALJ London seems to have primarily relied on a report dated August 24, 1994 submitted by Dr. Lyudmila Lvov, a treating psychiatrist at New Hope Guild.[3] However, as discussed below, the documentation from Mr. Talanker's treating psychiatrists at New Hope Guild suggests that he experienced the disabling disability prior to this date.

The report from Dr. Lvov, who treated Mr. Talanker from February 1993 until the August 1994 date of the report, does not support the ALJ's assertion that there was a precipitous decline in Mr. Talanker's mental health during the period she was treating him until she diagnosed him with paranoid schizophrenia in August 1994. (*See* R. 166–70.) Rather, in coming to this conclusion, ALJ London appears to have overlooked Dr. Lvov's treatment notes from February 1993. Dr. Lvov's treatment notes, dated February 21, 1993, reveal that she diagnosed Mr. Talanker with paranoid schizophrenia at that time.[4] (R.

---

**3.** The stipulation's reference to August 8, 2004 as the date in which Mr. Talanker was diagnosed with schizophrenia and prescribed Stelazine (*see* R. 184) also presumably refers

to Dr. Lvov's report, as there is no August 8, 2004 report in the record.

**4.** In February 2003 and August 2004, Dr. Lvov also classified Mr. Talanker's diagnosis

127.) In addition, Dr. Lvov prescribed the same medication for schizophrenia, Stelazine, at the same dosage level in February 2003 that she prescribed in August 1994.[5] (R. 127, 167.) In describing the February 2003 interview, she noted "depressed mood, anxious affect, persecutory delusions." (R. 126.) In her August 2004 interview, Dr. Lvov wrote that Mr. Talanker "demonstrated mistrust, reading hidden meaning into neutral remarks and restrictive affect" and, among his symptoms noted suspicious, conservative and guarded, and delusional. (R. 167.) Both reports document Mr. Talanker's persecutory delusions concerning the KGB and FBI. (R. 126, 166.) In February 1993, Dr. Lvov reported that Mr. Talanker feels "totally helpless" (R. 126) and in August 1994, Dr. Lvov noted that Mr. Talanker felt that the KGB and FBI "controlled his life and behavior" (R. 166.) Dr. Lvov does note in her August 2004 report that Mr. Talanker "reports that his thinking seems slowed down or that he feels somehow not as efficient and as clear in his problem-solving ability as he used to be." However, given her previous diagnosis, it appears likely that the reference point for this statement is a time prior to treatment. Therefore, on the whole, the two reports from Dr. Lvov support the conclusion that Mr. Talanker's psychological impairment was similar in severity in February 1993 to the one found disabling in August 1994.

A February 2005 letter from Dr. Yampulsky, another treating psychiatrist at the New Hope Guild Center, provides further support for the inference that Dr. Talanker's mental condition was similarly disabling prior to August 1994. Dr. Yampulsky stated that "Mr. Talanker has been diagnosed as schizophrenic, with paranoid features," "has marked difficulty interacting with others and his social functioning is very poor," and "his concentration and ability to focus on and persist with tasks is extremely limited." (R. 165.) In the next paragraph, Dr. Yampulsky opined that "Mr. Talanker has been unable to perform any full-time work throughout the two year period he has been treated here due to his psychiatric impairments." (R. 165.) While this statement is not conclusive as to whether plaintiff was in fact disabled during this time period, *see* 20 C.F.R. 416.927(e)(2), it supports an inference that the letter serves as a retrospective diagnosis. Moreover, it expressly contradicts ALJ London's decision, in which he relies on this letter as evidence to support Mr. Talanker's "significant psychiatric decline" in August 2004. (*See* R. 264.)

A June 24, 1994 questionnaire completed by Dr. Rinsky, who treated plaintiff from July 16, 1993 to May 20, 1994, also tends to show that Mr. Talanker experienced serious psychological impairments that interfered with his ability to work during the period prior to the onset date identified by the ALJ. Dr. Rinksy diagnosed plaintiff with "Major depression 296.32" with paranoid personality traits. (R. 154.) He found that plaintiff had a depressed mood and restricted affect and appeared fearful and apprehensive. (R. 155.) He noted that plaintiff's concentration was poor and he had a short attention span. (R. 155.) He concluded that Mr. Talanker experienced marked difficulties in social functioning, including getting along with family

---

under the same diagnosis code, No. 295.33, which refers to Schizophrenic disorders-paranoid type subchronic with acute exacerbation.

**5.** In the record from the 1997 ALJ hearing, ALJ London appears to pay particular atten-

tion to the fact that Mr. Talanker was prescribed Stelazine in August 1994 without recognizing that he had also been prescribed this medication earlier. (*See* Supp. R. at 279–80.)

members, friends, and strangers, avoiding social isolation, avoiding altercations, and holding a job and avoiding being fired. (R. 156.)

ALJ London points to plaintiff's testimony at the hearing and plaintiff's consultative examination with Dr. Jochanan Weisenfreund as corroboration for his conclusion that plaintiff's condition deteriorated until it became disabling in August 1994. However, as noted above, although the ALJ asked plaintiff if his condition had worsened around August 1994, plaintiff's answer was non-responsive. (*See* Supp. R. at 277–78.) The report by consultative psychiatrist Dr. Jochanan Weisenfreund, dated January 29, 1997 is also not relevant to the issue of the August 1, 1994 onset date. The report, which diagnosed Mr. Talanker with "Schizoaffective Disorder–Depressed DSM IV 295.70," noted that, "The patient . . . continued to say that he had been depressed for several years, and that the depression had worsened in[ ][t]he last few months." (R. 178.) This finding has no relevance to Mr. Talanker's state of mind from 1993 to 1994.

The only evidence in the record that tends to support the ALJ's conclusion that Mr. Talanker's psychological impairment was serious but not disabling in 1993 comes from consulting physicians. Dr. Hashemi, who examined plaintiff on July 28, 1993, stated that Mr. Talanker "was cooperative, alert, and oriented globally" and his "affect was appropriate." (R. 138). Dr. Hashemi noted that "[p]atient denied hallucinations, although he reported being questioned by KGB and FBI, but he did not seem grossly delusional today." (R. 138–39.) His diagnostic impression was "Major depressive disorder, non-specified. Rule out paranoid disorder." (R. 139.) He concluded that "[t]he patient needs psychiatric help" and "[h]e does not seem to get [sic] acutely psychotic or mentally decompensated today." (R. 139.)

Dr. Barash, who examined plaintiff on November 1993, opined that "[t]here appear to be consistency for allegations of a psychiatric condition causing some degree of vocational limitation only in the sense that he appears to be depressed with some psychomotive slowing." He noted that Mr. Talanker's memory, comprehension, adaptability, and social skills appeared to be without significant limitations. (R. 150.) Dr. Barash diagnosed plaintiff with "Major depressive disorder DSM III on 296.2." (R. 150.)

In making his decision that Mr. Talanker's impairment did not become disabling until August 1994, ALJ London does not purport to be relying on either of these two consultative opinions as the basis for his opinion. Rather, he appears to be relying on the 1997 consultative examination report, which diagnosed Mr. Talanker with paranoid schizophrenia, and the reports from Mr. Talanker's treating physician at New Hope Guild. However, as explained above, none of these reports provide support for the ALJ's finding of an August 1994 disability onset date. Moreover, the ALJ decision provides no rationale justifying reliance on the July and November 1993 reports of the consulting physicians rather than the February 1993 and June 1994 reports from Mr. Talanker's treating physicians. ALJ London's failure to acknowledge the findings from Mr. Talanker's treating physicians prior to the August 1994 report and either accord their medical opinions controlling weight or explain his decision to discount them constitutes legal error. *See* 20 C.F.R. §§ 404.1527(d)(2); *see also Blundo v. Sullivan*, No. 90 Civ. 3781, 1992 WL 390237, at *5 n. 8 (E.D.N.Y. Dec.8, 1992) ("[T]he ALJ's failure to acknowledge the objective findings of physicians who have treated or

examined the plaintiff, and at the very least, explain his rejection of such evidence is plain error."). Therefore, the court reverses the portion of the ALJ's decision finding that Mr. Talanker's impairment was not disabling until August 1994, because the ALJ did not apply the correct legal standards or support his determination with substantial evidence.

The court finds that the medical evidence in the record supports the conclusion that the impairment the ALJ found to be disabling as of August 1994 was similarly severe at the time of Mr. Talanker's application for disability benefits. Although it would have been helpful for ALJ London to have requested Mr. Talanker's treating psychologists to opine as to the progression and severity of his psychological impairment, their reports suggest a consistent and serious pattern of psychological illness. Generally, a treating source's opinion is entitled to controlling weight, as long as it is well-supported by medically acceptable diagnosis techniques and is not inconsistent with the other evidence in the record. *See* 20 C.F.R. 404.1527(d)(2). There has been no dispute in the record as to whether Mr. Talanker's treating psychiatrists at New Hope Guild relied on medically acceptable techniques; in fact, ALJ London relied primarily on Dr. Lvov's August 1994 report in support of his finding that Mr. Talanker was disabled as of that date. Therefore, the only reason not to give the initial February 2003 report by Dr. Lvov controlling weight would be that it is contradicted by the reports of the consulting physicians. However, because the treating physician has developed a relationship with the claimant over time and has the benefit of a longitudinal view of the claimant's condition and progress, the treating physician's opinion is considered more valuable than the opinions of consulting physicians, who may have examined the claimant only

once. *See* 20 C.F.R. 404.1527(d)(2); *Peed v. Sullivan,* 778 F.Supp. 1241, 1246 (E.D.N.Y.1991); *Schisler v. Heckler,* 787 F.2d 76, 85 (2d Cir.1986).

In addition, all of the medical experts who evaluated plaintiff's mental health during the period prior to August 1994 diagnosed him with mental impairments; their assessments differed only with regard to the specific mental disorders diagnosed. Courts in this circuit have previously observed that "[t]he mere fact that several physicians have diagnosed a particular claimant's mental condition differently does not compel a conclusion that the claimant is not suffering from a mental impairment." *Benedict v. Heckler,* 593 F.Supp. 755, 758–759 (E.D.N.Y.1984); *see also Rivera v. Schweiker,* 560 F.Supp. 1091, 1096 (S.D.N.Y.1982) (noting that a claimant may be found disabled by a mental impairment "even if there are disagreements regarding diagnosis … it is not unusual to find, in the same individual, signs and test results associated with several pathological conditions").

Therefore, the court gives substantial weight to the diagnosis of Mr. Talanker's treating physicians and finds that their opinions are not substantially contradicted by the findings of the consulting physicians. On the basis of the February 2003 diagnosis and treatment notes of Dr. Lvov, the court determines that Mr. Talanker's impairment was comparable in severity at the time of his submission of a disability claim to the impairment found disabling in August 2004.

### C. *Appropriate Remedy*

█ Remand is appropriate when the Commissioner failed to correctly apply the law and the regulations. *See Rosa,* 168 F.3d at 82–83. When "the administrative record contains gaps" and "further devel-

opment of the evidence is appropriate," courts generally remand a case to the Commissioner for further administrative proceedings. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir.2004); *see also Rosa*, 168 F.3d at 83 (finding remand for further administrative proceedings appropriate when "further findings would so plainly help to assure the proper disposition of [the] claim."). However, when a court finds "no apparent basis to conclude that a more complete record might support the Commissioner's decision, [it may] opt[ ] simply to remand for a calculation of benefits." *Id.* A court should order payment of benefits only where the record contains "persuasive proof of disability" and remand for further evidentiary proceedings would serve no further purpose. *Parker*, 626 F.2d at 235; *Carroll*, 705 F.2d at 644.

■ In the instant case, remand with instructions to obtain additional psychiatric opinions regarding the onset date of plaintiff's disability would not be useful as the record indicates that plaintiff has been disabled within the meaning of the Act since his alleged onset date, April 1, 1993. The length of time that has passed from the alleged date of onset also would make receiving additional testimony or opinions on this issue very difficult. Given "the painfully slow process by which disability determinations are made," *Carroll v. Sec'y of Health and Human* Servs., 705 F.2d 638, 644 (2d Cir.1983), length of time is certainly a relevant factor in the determination of whether to remand for further proceedings or remand solely to calculate benefits. *See Balsamo*, 142 F.3d at 82 (noting that proceedings had been pending for more than four years); *Carroll*, 705 F.2d at 644 (noting that the plaintiff applied for disability benefits four years ago). Plaintiff applied for disability benefits fourteen years ago. Remanding for further proceedings, particularly when the Commissioner has made no suggestion that she can offer new evidence to support a contrary decision, could delay payment of plaintiff's benefits for many more years. Based on the evidence establishing plaintiff's psychological impairment as of February 1993, the failure of the Commissioner to present evidence that plaintiff's impairments were not disabling until August 1994, and the length of time this litigation has already consumed, reversal and immediate award of benefits is appropriate.

### D. Claim for punitive and compensatory damages

■ In addition to plaintiff's claim for retroactive payments of SSI benefits, he also demands punitive and compensatory damages. The court notes that plaintiff filed his initial SSI claim fourteen years ago and that nine years have passed since plaintiff filed his request for reconsideration of the 1997 ALJ decision granting him benefits as of August 1, 1994. The court also notes that the Appeals Council took responsibility for its failure to act on his request for reconsideration of the 1997 ALJ decision until July 2005 after remand from the Eastern District of New York. The court sympathizes with the difficulties experienced by plaintiff as a result of such a significant delay.in resolving this issue. Nevertheless, there is no legal basis under the Constitution or the Social Security Act to grant plaintiff punitive or compensatory damages. *See Schweiker v. Chilicky*, 487 U.S. 412, 424–29, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). Consequently, the court is unable to grant plaintiff's request to award monetary damages or to direct his claim to another appropriate forum to do so.

### CONCLUSION

For the reasons stated above, the defendant's motion for judgment on the plead-

ings is denied, the portion of the Commissioner's decision finding Mr. Talanker to be ineligible for SSI benefits prior to August 1, 1994 is reversed, and the case is remanded to the Commissioner solely for the calculation of benefits for the time period between April 1, 1993 and July 31, 1994.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.